# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**08-680**

**MILDRED KIRKLIN, ET VIR**

**VERSUS**

**BROOKSHIRE GROCERY
COMPANY, ET AL**

\*\*\*\*\*\*\*\*\*\*\*\*

**APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 216,871, DIVISION "F"
HONORABLE GEORGE C. METOYER, DISTRICT JUDGE**

\*\*\*\*\*\*\*\*\*\*\*\*

**JAMES T. GENOVESE
JUDGE**

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Marc T. Amy, and James T. Genovese, Judges.

**AFFIRMED.**

**Howard N. Nugent, Jr.**
**330 St. James Street**
**Post Office Box 1309**
**Alexandria, Louisiana  71301-1309**
**(318) 445-3696**
**Counsel for Plaintiff/Appellant:**
    **Mildred Kirklin**

**J. Morgan Passman**
**Walker & Passman**
**3800 Parliament Drive**
**Post Office Box 13020**
**Alexandria, Louisiana  71315-3020**
**(318) 445-4516**
**Counsel for Defendants/Appellees:**
    **Brookshire Grocery Company and**
    **Randy Randall**

**GENOVESE, Judge.**

In this slip and fall case, Plaintiff/Appellant, Mildred Kirklin, appeals the trial court judgment in favor of Defendants/Appellees, Brookshire Grocery Company d/b/a Super One Foods (Super One), and its manager, Randy Randall. For the following reasons, we affirm.

## FACTS

This case involves a "slip and fall" accident which occurred on April 29, 2003, at the Super One store on MacArthur Drive in Alexandria, Louisiana. Mildred Kirklin alleges that as she was grocery shopping, she "slipped on the [a] slippery chicken bone and managed to keep from falling to the floor by a sudden, almost super human effort to keep from impacting the floor, fell injuring herself, causing her to suffer . . . serious injuries" to her neck, shoulder, ankle, and back. As a result of the accident, Mrs. Kirklin filed suit against Super One and Mr. Randall, seeking general and special damages. Her husband, Arthur Kirklin, sought damages for loss of consortium.

Following a one-day bench trial on February 19, 2008, judgment was rendered in favor of Super One and Mr. Randall. In rendering its judgment, the trial court stated:

> After taking into consideration the entire suit record, all documents, and the testimony of all parties, and the arguments of counsel,
> There is no doubt in this court's mind that Mrs. Kirklin slipped and fell on a chicken bone. But it is insufficient to find that a chicken bone with the state of the law as it is regarding the slip and fall, that there must be actual or constructive knowledge. And this court finds that there was not anything to indicate that the store had actual or constructive knowledge.

A judgment to this effect was signed on February 28, 2008. Mrs. Kirklin appeals.[1]

## ASSIGNMENTS OF ERROR

Mrs. Kirklin contends that:

1.   [T]he lower court fell into error in failing to recognize that the Defendant had constructive notice of the presence of a greasy thigh bone, a dirty floor and fuzz balls.

2.   [T]he lower court fell into reversible error in failing to find that Defendant exercised reasonable care.

3.   [T]he lower court fell into reversible error in finding that the Plaintiff had met her burden of proof because of a presumption of failing to produce the only employee who would be in a position to give testimony about the length of time that the thigh bone that caused the Plaintiff to slip had stayed on the floor, and whether the floor was dirty.

4.   [T]he lower court erred in failing to award damages.

## STANDARD OF REVIEW

In *Blackman v. Brookshire Grocery Co.*, 07-348, p. 2 (La.App. 3 Cir. 10/3/07), 966 So.2d 1185, 1187, this court set forth the applicable standard of review as follows:

> An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even where the appellate court feels that its own evaluations and inferences are as reasonable. If the trial court's findings are reasonable in light of the record read in its entirety, a court of appeal may not reverse even though it is convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id*.

> When the trial court's findings are based on determinations regarding the credibility of witnesses, the manifest error--clearly wrong standard demands that great deference be given to the trier of fact's findings. This is so because only the fact finder can be aware of the

---

[1]Mr. Kirklin is not named in the Motion for Appeal. At trial, Mrs. Kirklin testified that Mr. Kirklin died on November 13, 2007.

variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said by the witnesses. *Id.* It is only where the documents or objective evidence so contradict a witness's story, or the story is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness's story, that the court of appeal may find manifest error or clear wrongness in a finding purportedly based on a credibility determination. *Id.*

Accordingly, we will review the record in its entirety to determine whether the trial court's factual findings were reasonable in light of the evidence.

## LAW AND DISCUSSION

Louisiana Revised Statutes 9:2800.6 provides, in relevant part:

A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.

B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:

(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

C. Definitions:

(1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown

3

that the employee knew, or in the exercise of reasonable care should have known, of the condition.

Only Mrs. Kirklin and Mark Russell McGrew, an assistant manager on duty at Super One at the time of the accident, testified at the February 19, 2008 trial of this matter. Super One also introduced into evidence the deposition testimony of Dr. Kenneth W. McMillin.

Mrs. Kirklin testified that she slipped on "one of the little thigh bones" of a chicken while walking down the bread aisle. After she slipped, Mrs. Kirklin recalled that the floor had "a little grease area there where the bone was." Mrs. Kirklin then walked over and told a cashier about her accident. According to Mrs. Kirklin, the cashier used a paper towel to pick up and throw away the chicken bone. Mrs. Kirklin then left the store in order to put her bread in her car; however, she returned to speak with the store's manager.

Mrs. Kirklin stated that the condition of the store's floor was dirty, that the area around the bone on which she slipped had "[s]ome fuzz balls and dust balls," and that the area was "about the size of a basketball." She also testified that "[t]he bone was dark and it had been there for, say, like a period of time." According to Mrs. Kirklin, she conducted an at-home experiment wherein she fried a chicken and stripped the meat off the bone in order to determine how long it would take the bone to darken. Mrs. Kirklin concluded "[i]t took maybe like a week or so" for the bone to darken.

Mr. McGrew testified that he was the assistant store manager on duty at Super One on the morning of April 29, 2003, and that he completed the Customer Report of Accident[2] after Mrs. Kirklin reportedly slipped. When questioned about his duties upon his arrival at work, Mr. McGrew answered: "The first thing I do is walk every

---

[2]We note that the Customer Report of Accident was introduced into evidence by Super One.

4

aisle, walk around the store, make sure everything is in its place where it's supposed to be, and nothing is out of place." According to Mr. McGrew, Mrs. Kirklin reported her accident to him at 11:30 a.m., and he had conducted an inspection at 11:00 a.m. wherein he did not see a chicken bone on the floor of the bread aisle.

Super One presented the testimony of Dr. Kenneth W. McMillin, a professor of animal science at Louisiana State University Agricultural Center for twenty-eight years, whose research is primarily in meat and poultry processing and packaging. Dr. McMillin countered Mrs. Kirklin's assertion that the color of the chicken bone suggested that it had been on the floor for some period of time. Dr. McMillin testified:

> My experience with both fried and boiled and baked chicken bones is that once the meat is removed, then unless the bones are subjected to extreme environmental conditions, which would not be normal room temperature and humidity or light, then the color doesn't substantially change at all. The bone color is set immediately after freezing and/or cooking.

He also stated that he too had performed an experiment wherein he boiled a chicken and stripped the meat off the bone in order to determine how long it would take the bone to darken. According to Dr. McMillin, once a bone has been cooked, it cannot be determined how long it has been exposed to air.

Brookshire argues that Mrs. Kirklin offered no evidence to support her assertion that the chicken bone was on the floor long enough to have been discovered as required by La.R.S. 9:2800.6. We agree. Aside from her own self-serving testimony, Mrs. Kirklin failed to present any evidence that Brookshire created or had actual or constructive notice of the presence of the chicken bone on the floor of the store prior to the occurrence as required by the statute. In light of the evidence in the record, the trial court's factual findings were reasonable, and we do not find manifest

or clear error in the trial court's judgment. Having found no liability on the part of the Defendants, we need not address the issue of damages.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against the Plaintiff, Mildred Kirklin.

**AFFIRMED.**