# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 19-759

**STEVE DODGE AND BRANDIE DODGE**

**VERSUS**

**WHITE'S MOBILE HOMES, INC.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CATAHOULA, NO. 28,869 "A"
HONORABLE DON C. BURNS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**VAN H. KYZAR**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Billy Howard Ezell, Phyllis M. Keaty, and Van H. Kyzar, Judges.

**AFFIRMED IN PART; REVERSED IN PART.**

Joseph A. Boothe
Smith, Taliaferro & Purvis
PO Box 298
Jonesville, LA 71343
(318) 339-8526
COUNSEL FOR DEFENDANT/APPELLANT:
    White's Mobile Homes, Inc.

Charles D. Elliott
Charles D. Elliott & Associates, LLC
720 Murray Street
Alexandria, LA 71301
(318) 704-6511
COUNSEL FOR PLAINTIFFS/APPELLEES:
    Steve Dodge
    Brandie Dodge

**Kyzar, Judge.**

Defendant, White's Mobile Homes, Inc., appeals the judgment of the trial court in this redhibition claim, rescinding the sale of a new mobile home to Plaintiffs, denying Defendant's exceptions of peremption and prescription under the New Manufactured and Modular Home Warranty Act, and awarding attorney fees to Plaintiffs in the sum of $10,000.00. For the reasons set forth herein, we affirm the judgment of the trial court, except as to the trial court's award of attorney fees, which we reverse.

## FACTS AND PROCEDURAL HISTORY

Plaintiffs, Steve and Brandie Dodge, filed the instant suit in redhibition against defendants, White's Mobile Homes, Inc. (Whites) and Cappaert Manufactured Housing (Cappaert). Plaintiffs allege that on or about May 2, 2016, they purchased a new 2016 mobile home from Whites, serial number CHVM31234A, which was manufactured by Cappaert in April of 2016. The purchase price for the home was $54,000.00 plus sales taxes totaling $2,049.30. The mobile home was delivered to the Dodge's lot on or about May 3, 2016. In their petition, Plaintiffs assert that they started experiencing problems with their mobile home shortly after it was delivered and set up. Alleging numerous defects in the home, Plaintiffs sought a rescission of the sale, return of the purchase price, costs and attorney fees.

Cappaert filed peremptory exceptions of peremption and no cause of action, asserting that any cause of action Plaintiffs may have against it as the builder of the mobile home is governed by the provisions of the New Manufactured and Modular Home Warranty Act (NMMHWA), La.R.S. 51:912.1, et seq., which provides the exclusive cause of action for the purchaser of a new manufactured home for manufacturing defects. Further, under the NMMHWA, specific warranties are provided for periods of one year, two years, and five years, respectively, beginning

from the date that legal title to the home is conveyed to the purchaser or the date that the home is first occupied, and that an action to enforce any of the foregoing warranties is subject to a peremptive period which ends thirty days after the expiration of the applicable warranty period. Cappaert urged in the exceptions that the grounds of the objections raised herein cannot be removed, as they are either a) legally perempted, b) specifically excluded from warranty coverage, or c) are not a recoverable item of damages under the NMMHWA, which is the exclusive remedy to the purchaser of a new manufactured home in Louisiana. Conceding merit to the exceptions, Plaintiffs voluntarily dismissed Cappaert, reserving their rights against Defendant Whites.

Whites thereafter filed peremptory exceptions of peremption, prescription, and no cause of action asserting that it too was subject to the provisions of the NMMHWA and that it should likewise be dismissed from the suit. In its petition, Whites claimed to fall within the definition of "builders" of the subject mobile home as provided for in La.R.S. 51:912.3(1). A hearing on the exceptions took place on January 25, 2018, after which the exceptions were denied by the trial court. Judgment to that effect was signed on February 23, 2018.

A bench trial took place on March 15, 2019, during which Whites re-urged its previous position that the NMMHWA applied to it as the dealer of the home in question. The trial court rejected that argument, relying on the reasons and previous denial of Whites' exceptions. In accordance with written reasons dated April 22, 2019, the trial court rendered judgment in favor of Plaintiffs, decreeing that "the defects in the mobile home were not normal or customary to a new mobile home and not known to the Plaintiffs, and the Plaintiffs have proven their claim in rehibition[sic][.]" The trial court further ordered Defendant Whites to return the purchase price paid by the Plaintiffs, together with legal interest, ordered Plaintiffs

2

to tender the mobile home to Whites within thirty days, and awarded Plaintiffs $10,000 in attorney fees. Whites was cast with all court costs.

Appealing the judgment of the trial court, Whites makes the following assignments of error:

> 1) The trial court erred in denying Defendant-Appellant White's Mobile Homes, Inc.'s Peremptory Exceptions of Peremption, Prescription, and No Cause of Action[.]

> 2) The trial court erred in determining that plaintiffs' claims had not prescribed[.]

> 3) The trial court erred in awarding plaintiffs rescission of the sale of the mobile home[.]

> 4) The trial court erred in awarding plaintiffs attorneys' fees[.]

## DISCUSSION

*Is Whites a Builder Pursuant to the NWWHMA?*

Whites first asserts that the trial court erred in not applying the provisions of the NMMHWA's prescriptive period, as it asserts that Whites meets the definition of a builder of the home as provided for in the act. *See* La.R.S. 51:912.3-912.4. A "builder" for the purposes of the NMMHWA is defined as "a person or an entity that designs, manufactures, or constructs homes, including dealers, developers, manufacturers, and installers, whether or not the consumer purchased the underlying real estate with the home or the builder initially occupied the home as his residence." La.R.S. 51:912.3(1). Whites argues that as the NMMHWA provides the exclusive remedy for claims against "builders" of mobile homes and that the definition of "builders" in the NMMHWA specifically includes "dealers" and "installers", the peremptive period for Plaintiffs' claims under the NMMHWA expired June 1, 2017, over three weeks before their petition was filed. Thus, it asserts that Whites' peremptory exceptions of peremption, prescription, and no cause of action should

3

have been granted and Plaintiffs' petition in redhibition should have been dismissed with prejudice.

The sole issue raised by Whites' assignment of error involves statutory interpretation and is a question of law. As such, the appropriate standard of appellate review is de novo. *Platinum City, L.L.C. v. Boudreaux*, 11-559 (La.App. 3 Cir. 11/23/11), 81 So.3d 780.

In ruling on the exceptions, the trial court interpreted the NMMHWA as follows:

> In the current case, we have a dealer (and possibly an installer) who took no part in the design, manufacturer, or construction of the mobile home. I find that fact to be fatal to the validity of the exceptions raised by White's Mobile Homes. Had the legislature intended to extend the scope of the NMMHWA to cover a seller (dealer) or installer who has nothing to do with the design/manufacturer/construction process, it could have easily done so.

During the trial on the merits, Whites reiterated its argument that it was covered under the provisions of the NMMHWA and as such the prescriptive/peremptive periods provided for in the act apply to it also. At the conclusion of the trial, the trial court rejected Whites' position again, relying on the reasons and previous judgment rendered in the hearing on the exceptions. We agree with that ruling.

The NMMHWA's definition of a "builder" as "a person or an entity that designs, manufactures, or constructs homes, including dealers, developers, manufacturers, and installers, whether or not the consumer purchased the underlying real estate with the home or the builder initially occupied the home as his residence" is deliberate. La.R.S. 51:912.3(1). Whites argues that the phrase is a stand-alone definition of the word, in addition to the given meaning as one who "designs, manufactures, or constructs homes[.]" *Id.* Defendant's interpretation would have this court adopt a definition that would include as a "builder" any person or entity

4

that designs mobile or modular homes, manufactures such homes, constructs such homes, is a dealer of such homes, develops subdivisions with new mobile or modular homes, and anyone who installs such homes. *See Id.* This expansive interpretation is incongruent with the plain wording of the statute, the legislative intent in enacting the statute, and contrary to ordinary rules of statutory construction.

Our reading of the wording of the provision is that builders are persons or entities that "design[], manufacture[], or construct[]" mobile or modular homes and include any dealers, developers, manufacturers, and/or installers that also participate in the design, manufacturing, or construction of such homes. La.R.S. 51:912.3. The phrase "including dealers, developers, manufacturers, and installers" is a qualifier to the previous phrase defining a builder as "a person or an entity that designs, manufactures, or constructs homes[.]" *Id.* It is not a stand-alone definition of builder in addition to the previous clear definition of the term.

The New Manufactured and Modular Home Warranty Act was enacted by Act 112 of the 2012 Louisiana Legislature, which included as its "Purpose" the following provision:

> The legislature finds a need to promote commerce in Louisiana by providing clear, concise, and mandatory warranties for the purchasers and occupants of new manufactured and modular homes in Louisiana and by providing for the use of homeowners' insurance as additional protection for the public against defects in the construction of new manufactured and modular homes. **This need can be met by providing a warranty for a new manufactured or modular home purchaser defining the responsibility of the builders to that purchaser and subsequent purchasers during the warranty periods provided herein.** The warranty, which is mandatory in most cases, shall promote uniformity of defined building standards. Additionally, all provisions of this Part shall apply to any defect, although there is no building standard directly regulating the defective workmanship or materials.

La.R.S. 51:912.1 (emphasis added).

5

As clearly set forth in the purpose of the act, the legislature intended to give a warranty to purchasers of new mobile or manufactured homes as against builders thereof, to define the responsibility of such builders, and to promote uniformity of building standards in connection with the manufacture of such homes. Had the legislature intended the provisions to apply to sellers, it could have, and would have, simply applied the act to any and all new mobile and modular homes sold in the state of Louisiana, whether built by the seller or not. It did not do so. Our review of the purpose and intent of the statute serves to further support our interpretation above. Accordingly, we find no merit to Whites' first assignment of error.

*Prescription of a Redhibition Action*

Whites next asserts that the trial court erred in its determination that the Plaintiffs' redhibition claim had not prescribed. While the exception of prescription as to the redhibition claim was originally rejected by the trial court, Whites urged the exception again during and after the trial. Whites argues that repairs performed by its employee Jason Myers were done not on its behalf but on behalf of the manufacturer Cappaert, and, as such, does not constitute Whites "accept[ing] the thing for repairs" as would interrupt prescription per La.Civ.Code art. 2534. Plaintiffs contend, on the other hand, that the trial court properly rejected the exception of prescription, as the mobile home was tendered for repairs and repairs were made, by Whites, less than one year before suit was filed. *See* La.Civ.Code art. 2534.

Louisiana Civil Code Article 2534 provides, relative to actions in redhibition, as follows:

> A. (1) The action for redhibition against a seller who did not know of the existence of a defect in the thing sold prescribes in four years from the day delivery of such thing was made to the buyer or one year from the day the defect was discovered by the buyer, whichever occurs first.

6

(2) However, when the defect is of residential or commercial immovable property, an action for redhibition against a seller who did not know of the existence of the defect prescribes in one year from the day delivery of the property was made to the buyer.

B. The action for redhibition against a seller who knew, or is presumed to have known, of the existence of a defect in the thing sold prescribes in one year from the day the defect was discovered by the buyer.

C. In any case prescription is interrupted when the seller accepts the thing for repairs and commences anew from the day he tenders it back to the buyer or notifies the buyer of his refusal or inability to make the required repairs.

Prescription and peremption are peremptory exceptions provided for in La.Code Civ.P. art. 927(A)(1) and (2). Evidence supporting or contravening either of the exceptions may be introduced if the grounds are not apparent from the petition. La.Code Civ.P. art. 931. "If evidence is introduced at the hearing on a peremptory exception raising the objection of prescription, the trial court's findings of fact are reviewed under the manifest error-clearly wrong standard of review." *Pizzolato v. Grier*, 18-912, p. 5 (La.App. 1 Cir. 3/14/19), 275 So.3d 273, 276, *writ denied*, 19-698 (La. 9/24/19). Evidence was introduced in the current case, and the trial court's determination of factual matters regarding such will not be disturbed unless clearly wrong. *Id.*

Jason Meyers, an employee of Whites, testified at trial, and his testimony supports the conclusion that he worked on repairs to the mobile home less than a year prior to the Dodges' filing of the lawsuit. He testified that he participated in a repair to the frame on the mobile home on June 25, 2016, although he added that he was there helping the manufacturer's representative with this necessary repair. Mr. Meyers testified that he also participated in repairs to the ceiling on July 16, 2016, again within a year of the filing of the suit. These repairs were confirmed by the Dodges. While Whites argues that Mr. Meyers was not working as an agent of

7

Whites when he assisted with these late repairs, there is nothing in the record to support such a finding. No other employee of Whites testified at trial to add to, contradict, or clarify Mr. Meyers' actions. In addition, counsel for the Dodges sent a letter complaining of the repairs on March 16, 2017, apparently triggering an inspection by Whites, who enlisted the aid of a State Fire Marshall's office inspector, although no further repairs were made following that inspection.

The trial court found, as a matter of fact, that Plaintiffs were not aware of the problems prior to purchase and that tenders for repairs, and actual repairs, took place less than a year before the filing of the lawsuit. As stated by the trial court in its ruling: "Defendant's acceptance of the problems and ensuing attempt to repair the problem that occurred on or about July 16, 2016, interrupted prescription. Thus the suit filed June 23, 2017 was timely." Appellant has not shown how that finding of fact is clearly erroneous. In fact, the finding is supported by the testimony of Whites' own employee, Mr. Meyers, as well as the testimony of Mrs. Dodge. Whites has not shown that the factual determinations of the trial court as to these repair attempts during the year preceding the filing of suit are manifestly erroneous. We therefore affirm the denial of the exception of prescription.

*Rescission of the Sale*

Whites next asserts that the trial court erred in awarding Plaintiffs rescission of the sale of the mobile home. Whites argues that the record does not reflect sufficient evidence for the trial court's finding that the issues with the mobile home were serious and persistent enough to warrant a rescission of the sale in redhibition. Further narrowing the argument, Whites urges that the testimony introduced at trial show that the issues with the mobile home did not rise to the level of redhibitory defects, and that Mrs. Dodge's testimony contradicted itself and is thus lacking in credibility. Plaintiffs counter that based on our appellate standard of review, the trial

8

court's finding that Plaintiffs would not have purchased the mobile home if they had known of the defects in the home established at trial cannot be reversed on appeal. Plaintiffs assert that there was sufficient evidence of serious defects in the mobile home as shown through the testimony of Plaintiffs and other evidence of record.

The standard of appellate review in a redhibition case is set forth in *Hearod v. Select Motor Co., Inc.*, 07-1502, p. 4 (La.App. 3 Cir. 4/2/08), 980 So.2d 830, 833-34, *writ denied*, 08-931 (La. 6/20/08), 983 So.2d 1283, which states that "[t]he ultimate question of the existence of a redhibitory vice . . . [is a question] of fact for the trial court, which should not be disturbed in the absence of manifest error or abuse of its wide discretion." An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. *Id.*, citing *Blackman v. Brookshire Grocery Co.*, 07-348 (La.App. 3 Cir. 10/3/07), 966 So.2d 1185. An appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Tidwell v. Premier Staffing, Inc.*, 05-500 (La.App. 3 Cir. 2/1/06), 921 So.2d 1194.

In its April 22, 2019 Reasons for Judgment, the trial court discussed its findings of fact and ruled as follows:

> Defendant further argues that the defects were neither especially inconvenient nor especially egregious.
>
> The evidence says otherwise. The problems observed by the Court cannot be characterized as normal. They do appear to be inconvenient and egregious.
>
> The defects shown to exist are more than normal to ordinary new mobile homes.
>
> Mr. and Mrs. Dodge both testified that they would not have purchased this mobile home had they known of these defects.
>
> The mobile home was ordered, based upon Plaintiffs' selection of a similar model on Defendant's lot. It must be assumed that the model they viewed did not have the many problems and defects they

9

have complained of. Surely it had even floors and ceilings, doors that closed properly and proper windows, counter tops, and trim.

They testified that problems were noticed immediately - uneven floors and mold.

Not all the defects remain. Many have been repaired or replaced. However, Plaintiff has shows[sic] that many problems still exist. The counter tops are not level. A window is broken. There is a gap in a wall and molding strips do not match. Mrs. Dodge said the problems were a combination of many little things. The mold still exists. She further said that she took off work several days and had to live elsewhere while her house was torn apart. She testified she was reduced the tears on several occasions. Her husband confirmed that testimony.

When asked if he would have purchased this mobile home had he known the problems, he responded, "definitely not".

Plaintiffs are living in the mobile home. It is not totally unusable.

[Louisiana Civil Code Article 2520] states that a thing is redhibitory if its use is so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect.

Plaintiff had no knowledge of these defects. They first saw the mobile home when it was delivered and installed.

There is no evidence that Plaintiff seeks a reduction in price. Neither party has presented any evidence of cost of repairs, or value of inconvenience. There is no evidence to determine a reduction in price. It is clear that the mobile home presented to Plaintiff was not the same as the one they expected.

The Court is convinced that the defects shown were not normal or customary to a new mobile home.

Given the totality of the problems shown, the Court is convinced that Plaintiff would not have purchased the mobile home had they known of the defects, problems, or the continued effects to work to correct them. It appears these effects to repair were more than a slight inconvenience. Accordingly, the sale is rescinded.

We find no manifest error in the trial court's findings nor are they clearly wrong. The photographic evidence as well as the testimony of Mrs. Dodge, Whites' employee Mr. Meyers, and Fire Marshall Dunn, in varying ways, all support the conclusions of the trial court. Thus, we affirm the judgment as to this issue.

10

*Award of Attorney Fees*

Lastly, Whites asserts that the trial court erred in awarding Plaintiffs attorney fees. It argues that in redhibition, only sellers who had knowledge of the defect at the time of the sale are subject to attorney fees, and as the mobile home was not even on Whites' lot at the time of the sale, it could not have had actual knowledge of any defects with the home. Being a question of law, the appropriate standard of appellate review is de novo. *Boudreaux*, 81 So.3d 780.

> A seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have, is liable to the buyer for the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees. . .
>
> A seller is deemed to know that the thing he sells has a redhibitory defect when he is a manufacturer of that thing.

La.Civ.Code art. 2545.

As Whites is not the manufacturer of the home, there must be sufficient proof that Whites had knowledge of the defective condition of the home at the time of the sale. While the trial court awarded attorney fees to Plaintiffs, it made no specific findings of fact that Whites knew of the defects at the time of the sale so as to be a bad faith seller. We note the poignancy of Plaintiffs' argument that the testimony of Defendant's representative Mr. Meyers that all mobile homes have issues that must be addressed after delivery amounts to knowledge of its defects. It invokes the notion that with regard to the purchase of any mobile home the adage "Buyer Beware" is the norm. However, we cannot impute this testimony to a blanket assertion that this specific mobile home, nor each and every individual home sold, is defective. There was no other evidence or testimony that Whites knew of the defects in the home at the time it was delivered by Caeppart to Whites for set up on the Dodge's

11

property. Further, as the trial court did note in its Reasons for Judgement, the Dodge's did view a manufactured home of the same model while at Whites' display lot, and obviously there were no visible defects in that home or they would not have ordered that particular model. Thus, we conclude that Defendant, as seller, had no knowledge of the defects in the thing sold and the award of attorney fees is in error.

For these reasons we affirm the judgment of the trial court in part, and reverse only that portion of the judgment awarding attorney fees against Whites.

## DECREE

For the reasons herein set forth, we affirm the judgment of the trial court denying the exceptions of prescription and peremption as provided for in the New Manufactured and Modular Home Warranty Act, La.R.S. 51:912.1, et seq; affirm the judgment of the trial court denying Whites' exception of prescription in redhibition under La.Civ.Code art. 2545; and affirm the judgment of the trial court ordering a rescission of the sale of the home; but reverse the judgment of the trial court awarding attorney fees in favor of Plaintiffs Steve and Brandie Dodge against White's Mobile Homes, Inc. All costs of this appeal assessed to Defendant/Appellant White's Mobile Homes, Inc.

**AFFIRMED IN PART; REVERSED IN PART**

12